IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| E.M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. |
| TUCKER INN INC. d/b/a, | ) | |
| AMERICA'S BEST VALUE INN, | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT FOR DAMAGES**

# TABLE OF CONTENTS

A. Parties, Jurisdiction, & Venue……………………………….....7

B. Plaintiff's underage sex trafficking at the ABVI……...…….……9

C. Other Victims were trafficked for sex, including other minors, at the ABVI……………………………………………………13

D. Prostitution, sex trafficking, and other crimes were permitted and foreseeable at the ABVI…………………………………..16

E. Tucker Inn had knowledge of sex trafficking generally, at ABVI…………………………………………………..25

COUNT I-Statutory Liability 18 U.S.C. § 1595……………….....33

COUNT II- Nuisance…………………….………………………36

DAMAGES…………………………………...………………37

COMES NOW Plaintiff, E.M., in the above-styled action and hereby files her Complaint as follows:

1.

This case involves the sex trafficking of E.M., who was trafficked for sex as a 16-year-old minor child in and around June 2017, at the America's Best Value Inn located at 1600 Crescent Centre Blvd., Tucker, Georgia, 30084 (hereafter, the "ABVI"). Given the nature of the case, Plaintiff is identified in this Complaint only by her initials to prevent public disclosure of her name. E.M.'s counsel has either previously disclosed E.M.'s full name to defense counsel or will as soon as an appropriate protective order is in place.[1]

2.

At all times relevant to this Complaint, Plaintiff was a minor child and victim of sex trafficking at Defendant's hotel.

---

[1] Contemporaneously with this Complaint, Plaintiff has filed a Motion for Protective Order and Leave to Proceed Anonymously based on the nature of the allegations in the Complaint, which include the sex trafficking of E.M., a minor child and are intimate and personal in nature, as well as for her own personal safety.

3.

Tucker Inn, Inc. ("Tucker Inn") owned, controlled, operated, and directly employed the staff at ABVI.[2]

4.

Tucker Inn knew of the rampant sex trafficking and prostitution at the hotel for years, before, during, and after Plaintiff's trafficking. Tucker Inn knew because:

      a.    the facts of this specific Plaintiff while she was trafficked for sex as a minor child at the hotel;

      b.    its employees knew of and permitted sex trafficking and prostitution to occur at the hotel;

      c.    the facts of multiple other sex trafficking victims at the hotel before, during, and after Plaintiff;

      d.    the frequent and ongoing similar crime occurring at the hotel;

---

[2] Tucker Inn has owned and operated the property located at 1600 Crescent Centre Blvd., Tucker, Georgia, 30084 since the 1990s.  This property was branded as a Super 8 Motel until approximately 2016.  Since 2016, this property has been branded as an America's Best Value Inn.  Any reference to ABVI means the property located at 1600 Crescent Centre Blvd., Tucker, Georgia, 30084, regardless of brand affiliation.

    e.    the reports of hotel guests to Tucker Inn regarding sex trafficking and prostitution-related activities;

    f.    Tucker Inn's knowledge of sex trafficking generally, in the Atlanta area, and at this location specifically.

5.

A person under the age of 18 cannot consent to having sex in exchange for money. Any sale of sex in exchange for money involving a person under eighteen (i.e. "minor sex trafficking") is *criminal* sex trafficking under federal and Georgia law. 18 U.S.C. § 1591(a); O.C.G.A. § 16-5-46(8)(B).

6.

Minor sex trafficking does not require evidence that the victim was subject to "force, fraud, or coercion." 18 U.S.C. § 1591(a)(1), *et seq.* A minor engaging in sex for money is sex trafficking under 18 U.S.C. § 1591(a)(1), regardless of whether the minor has a trafficker/pimp using force, fraud, or coercion. Every person who engages in commercial sex with a minor is trafficking that minor under 18 U.S.C. § 1591(a)(1).

7.

Sex trafficking and prostitution were common occurrences at the ABVI, and Tucker Inn chose to ignore, allow, condone, facilitate, support, and/or permit such

activity at the ABVI.  Defendants are liable to Plaintiff for their actions and failures to act.  Tucker Inn's liability to Plaintiff is straightforward:

a)  The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), provides a cause of action to victims of sex trafficking against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person **knew or should have known** has engaged in an act in violation of" the TVPRA.  Defendants knowingly benefited from participation in a venture which they knew or should have known engaged in an act in violation of the TVPRA because they (i) rented the rooms at the ABVI in which Plaintiff was sex trafficked to Plaintiff, a 16-year-old girl, (ii) collected fees for rental of those rooms, and (iii) did so notwithstanding that they knew or should have known that Plaintiff was a victim of sex trafficking.  As such, Defendant is liable to Plaintiff for her damages under the TVPRA.

b)  The ABVI constituted a nuisance under Georgia law because the hotel negligently turned a blind eye and permitted illegal activities to occur at the hotel, including rampant prostitution, crimes against women, dangerous illegal activity, drugs, violence, harboring missing and

runaway underage girls, harboring wanted felons, sex crimes, and sex trafficking. As a direct result of this nuisance, Plaintiff was sold for sex at the ABVI, causing her substantial harm.

8.

Whenever reference is made in this complaint to any act, deed, or conduct of Tucker Inn, the allegation is that Tucker Inn engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Tucker Inn and the ABVI.

A.    **Parties, Jurisdiction, and Venue**

9.

E.M.  is a citizen of the United States of America, is a resident of the State of Georgia, and consents to the jurisdiction of this Court.  E.M.  was born in August 2000 and was a minor at the time of her sex trafficking as alleged herein.

10.

At all times relevant to this complaint, Defendant Tucker Inn owned, managed, supervised, operated, oversaw, controlled the operation of, and was inextricably connected to the renting of rooms at the ABVI, from which it benefited financially.

11.

Tucker Inn is a Georgia corporation with its principal place of business in Tucker, Georgia. It regularly conducts business in the State of Georgia, derives substantial revenue from services rendered in Georgia, and has committed tortious acts or omissions both within and outside Georgia, resulting in injuries in Georgia. Tucker Inn may be served with process by serving its registered agent Vinay Patel, 1600 Crescent Center Blvd., Tucker, Georgia, 30084.

12.

Jurisdiction and venue are proper as to Tucker Inn, and Tucker Inn was properly served with process in this action.

13.

This court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because E.M. asserts claims arising under 18 U.S.C. 1595(a), and pursuant to 28 U.S.C. § 1367 because E.M. 's state law claims form part of the same case of controversy as her federal law claims.

14.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the incidents forming the basis of this complaint occurred in DeKalb County, Georgia, within the Northern District of Georgia, Atlanta Division.

**B.** **Plaintiff's minor sex trafficking at the ABVI**

15.

Plaintiff, a minor at the time, was trafficked for sex over the course of several days at the ABVI in June 2017. Plaintiff was rescued from the hotel by the police, who arrested her trafficker there.

16.

The ABVI allowed Plaintiff, a 16-year-old girl, to rent the room in which she was trafficked with cash and a fake ID.  By permitting cash payment and a fake ID, Plaintiff's trafficker's name was not attached to the room.

17.

Plaintiff and other young sex trafficking victims frequently appeared throughout the hotel and on the hotel premises and approaches wearing very little clothing.

18.

When Plaintiff was trafficked at the ABVI, she witnessed multiple other sex traffickers operating openly and brazenly at the hotel.  In fact, Plaintiff's trafficker told Dekalb County Police Officers that he was familiar with another trafficker and victim who were also working out of Defendant's hotel.

9

19.

When Plaintiff was trafficked at the ABVI, she witnessed at least 3 other victims being trafficked for sex at the hotel.  As a result, a large number of buyers frequented the hotel each day.

20.

During Plaintiff's child sex trafficking at the ABVI, she witnessed other women and children being sold for sex at the hotel. These women and children wore lingerie or skimpy clothing throughout the hotel and parking lot. There was a constant stream of traffic throughout the day of men with no luggage visiting the hotel rooms of these women and children for short periods of time before leaving and being followed by another anonymous man.

21.

While Plaintiff was trafficked at the ABVI, she was made to have sex with as many as 5 older men each day.  Surveillance footage from Defendant's hotel captured multiple older men coming and going from Plaintiff's hotel room over a short period of time.  Tucker Inn knew or should have known that the number of daily, older male visitors to the room was clearly indicative of not only prostitution, but also of child sex trafficking.

22.

When Plaintiff was with a man buying sex in the room at the ABVI, her trafficker would loiter outside the room or in the hotel parking lot.  Once Plaintiff finished with her "date," her trafficker would go back into her room until the next buyer arrived. Tucker Inn knew or should have known that the conduct of Plaintiff's trafficker, in conjunction with the buyers frequenting the room, was indicative of not only prostitution, but also of child sex trafficking.

23.

Plaintiff and her trafficker interacted with Defendant's employees, agents, and representatives while she was being trafficked at the ABVI.   Plaintiff's trafficker disclosed to Dekalb County Police that he was told by Defendant's employees that he was being too loud while loitering on Defendant's property.

24.

While Plaintiff was trafficked for sex at the ABVI, she exhibited numerous well-known and visible signs of a child sex trafficking victim, of which Defendant knew or should have known, including her age and inappropriate appearance, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, loitering, soliciting male patrons, and monitoring and control of Plaintiff by her trafficker, an older man.

11

25.

While trafficked at the ABVI, Plaintiff's rooms evidenced numerous well-known and visible signs of sex trafficking of which Defendant knew or should have known. Frequently, the trash cans in the rooms in which Plaintiff was trafficked contained an extraordinary number of used condoms, and Plaintiff or her traffickers frequently requested an excessive number of towels from housekeeping. Furthermore, upon her rescue, DeKalb County Police discovered multiple room keys in Plaintiff's room to numerous hotel rooms.

26.

In June 2017, the DeKalb County Police Department conducted a sting operation at the ABVI.  Plaintiff was rescued from the hotel during the sting, and her trafficker was arrested for sex trafficking.

27.

When DeKalb County officers first made contact with the Plaintiff, her trafficker was found loitering in the stairwell closest to her room.  Upon discovering he had active warrants, officers arrested him and ultimately charged him with Trafficking a Person for Sexual Servitude, Pimping a Person under the age of 18, and Pointing a Pistol.

28.

At the time of her trafficker's arrest, police recovered his loaded firearm in Plaintiff's hotel room. Plaintiff recalls that her trafficker was often violent, and on at least one occasion, he threatened to shoot her.

29.

On October 4, 2018, Plaintiff's trafficker plead guilty to Pimping for Persons Under 18 and Giving False Information to a Law Enforcement Officer in the Superior Court of Dekalb County.

**C.    Other victims were trafficked for sex, including other minors, at the ABVI.**

30.

In the years prior to Plaintiff's sex trafficking at the ABVI, there were numerous women and children being sold for sex at the hotel.

31.

Prior to Plaintiff's minor sex trafficking at ABVI, prostitution and child sex trafficking were rampant and frequent occurrences, obvious to employees and guests at the hotel.

32.

In fall of 2012, a 15-year-old minor was trafficked for sex at the ABVI. Over the course of a few days, she was forced to see five or more adult male buyers per day.

33.

In 2013, another minor was trafficked for sex at the ABVI when she was just 14 years old. This minor frequently walked around the hotel and surrounding area to advertise herself. In her frequent interactions with hotel staff, she also exhibited clear outward signs of a minor sex trafficking victim.

34.

In 2016, a 17-year-old minor was trafficked for sex at the ABVI for 3–4 months, staying at the motel for weeks at a time with her trafficker, another victim in her twenties, and two additional minor victims of sex trafficking. These victims all stayed in one room and would all loiter outside when one of the other victims was sold for sex.

35.

While these three minors were being trafficked for sex at the ABVI, they would each have to see 5–6 men per day to be sold for sex, and frequently 20 or more men came to this shared room each day.

14

36.

The trafficker of these three minors was frequently violent at the ABVI and often assaulted the victims with little or no provocation.

37.

In addition to this trafficker, there were at least three other sex traffickers working in an open and obvious manner out of the ABVI at that same time.

38.

The trafficker of the three minors had an arrangement with ABVI employees to receive the same room in which to traffic victims. ABVI employees knew to give this trafficker a room on the second floor so that he could monitor buyer and police traffic coming into the hotel.

39.

The three minor victims frequently interacted with staff at the ABVI and often had to go to the front office and pay cash to extend their stay.

40.

Because the frequent sale of sex often left the room in disarray, and the victims needed numerous towels to clean themselves between buyers, housekeeping at the ABVI knew to visit these rooms more than once per day.

**D.      Prostitution, sex trafficking, and other crimes were not only foreseeable but permitted at the ABVI.**

41.

The ABVI and its approaches were well known for crime, prostitution, and sex trafficking.

42.

Tucker Inn directly operated the ABVI and employed the employees at ABVI since approximately 1999, giving it specific and direct knowledge of prior and ongoing crime, including prostitution and sex trafficking occurring at the hotel during that time period.

43.

At the time of, and prior to, Plaintiff's child sex trafficking at the ABVI, hotel employees knew crime and prostitution was open and obvious at the ABVI.

44.

Tucker Inn allowed, condoned, facilitated, and/or ignored the widespread prostitution and sex trafficking at the ABVI, including Plaintiff's child sex trafficking.

16

45.

Tucker Inn provided a market and beds for sex traffickers to sell women, boys, and girls—including children—to buyers of commercial sex.  That is why Plaintiff's sex trafficker brought her to the ABVI to be sold for sex.

46.

Prior to Plaintiff's sex trafficking at the ABVI, employees at the ABVI knowingly rented rooms to child sex trafficking victims who lacked proper identification and paid for their rooms in cash.

47.

Prior to Plaintiff's child sex trafficking at the ABVI, patrons frequently saw women who were being sold for sex at the hotel loitering outside, soliciting men for sex, and observed the heavy foot traffic surrounding  the rooms where sex and drugs were being sold at the hotel.

48.

The hotel employed minimal staff at the time of, and prior to, Plaintiff's child sex trafficking at the hotel.  The hotel failed to employ security guards to patrol the premises and protect patrons.

49.

Tucker Inn knew or should have known of other sex crimes at the hotel before, during, and after Plaintiff's child sex trafficking. Specifically, and based on publicly available information and police reports, Tucker Inn knew or should have known of the following sex crimes, among others, occurring on their premises and approaches:

a.  On or about January 2, 2015, police located a minivan with unattended minors in it at the ABVI.  A woman, later identified as their mother, was cited for **prostitution** at ABVI.

b.  On or about May 7, 2015, police conducted a **pandering** operation at the ABVI, and a man was arrested after having requested sex from two undercover female officers.

c.  On the same day, a second man was arrested after having **solicited** two undercover female officers for sex at the hotel.

d.  On or about May 8, 2015, police conducted a pandering operation at the ABVI, and arrested a man who **solicited** an undercover female officer.

e.  On the same day, another man was arrested after having **solicited** sexual relations from two undercover female officers.

18

f.  Again on or about May 8, 2015, a third man was arrested after having **solicited** sexual relations from an undercover female officer.

g.  Finally, on or about May 8, 2015, police arrested a fourth man at the ABVI who **solicited** two undercover female officers.

h.  On or about May 13, 2015, a female solicited a plain clothes officer for sex at the ABVI and was arrested for **pandering**.  The female was ordered to stay away from the ABVI.

i.  On or about June 2, 2015, a male was arrested at the ABVI for impersonating a police officer after he entered the room of known **prostitute**.

j.  On or about June 10, 2015, a male was arrested for possession of narcotics at the ABVI after he was observed transporting several females between the ABVI and another hotel for the purposes of **prostitution**.

k.  On or about June 2015, a male reported being **solicited** for sex by three males and a female at the ABVI.  During this interaction, he alleges his cell phone was stolen from his hotel room.

l.  On or about September 9, 2015, **a child victim of sex trafficking was rescued at the ABVI** and another woman was arrested for **sexual exploitation of children** related to human trafficking.

m.  On or about April 21, 2016, police conducted a prostitution operation at the ABVI, and arrested a woman for **prostitution**.

n.  On or about September 21, 2016, a female was arrested at the ABVI for **prostitution**, possession of marijuana, and obstruction.

o.  On or about September 22, 2016, a female was arrested at the ABVI for **prostitution** following a prostitution sting.

p.  On or about October 27, 2016, police responded to a person shot call and found a man on the ABVI stairwell who was shot 3 times.

q.  On or about November 9, 2016, police responded to the ABVI in reference to females being held against their will and forced to engage in **prostitution**.

r.  On or about November 14, 2016, a shooting occurred at the ABVI.

s.  On or about January 13, 2017, a female was arrested at the ABVI for **prostitution** and **keeping a place of prostitution** at the ABVI.

t.   On or about January 18, 2017, police responded to a battery call from
the ABVI where the victim indicated her attacker was engaged in
**prostitution**.

50.

The list of criminal conduct set forth in the foregoing paragraph only skims

the surface of the pervasive crime generally, and sex trafficking and prostitution

specifically, occurring at the ABVI before, during, and after Plaintiff was

trafficked there as a child.  The foregoing paragraph merely illustrates some of the

rampant crimes, including prostitution and sex trafficking, occurring at the ABVI

about which Defendant knew or should have known. The full police record relating

to the ABVI—about which Defendants knew or should have known under multiple

Dekalb County Municipal Codes—is publicly available in voluminous police

reports, among other places.[3]

---

[3] The Dekalb County Municipal Code provides, in relevant part: "Annually,
the county shall provide every owner, operator, keeper or proprietor of any hotel,
motel, or extended-stay hotel with a list of crimes and ordinance violations that
occurred on the property in the previous year."  Sec. 18-136(g).  Further: "Every
owner, operator, keeper or proprietor of any hotel, motel, or extended-stay hotel
shall, without delay, report violations of law to the DeKalb County Police
Department that were either witnessed or made known to them by an employee,
patron, guest, visitor or other person on the premises."  Sec. 18-136(a).  Likewise,
"[e]very owner, operator, keeper or proprietor of any hotel, motel, or extended-stay

51.

Tucker Inn knew or should have known of sex trafficking, prostitution, and

other criminal activity existing at the ABVI prior to Plaintiff's sex trafficking at the

ABVI.

52.

Tucker Inn had actual and constructive knowledge of prostitution, sex

trafficking, and other criminal activity existing on the property and in the

surrounding area prior to Plaintiff's sex trafficking. Tucker Inn knew or should

have known of these and other violent crimes occurring on their premises and

approaches.

53.

Defendant had actual or constructive knowledge of publicly available online

reviews of the ABVI reporting prostitution and crime occurring at the hotel,

including the following:

    (i)    September 20, 2010, from booking.com:

        **Horrible Hotel**

---

hotel shall, at all times, maintain a manager on duty capable of assisting,
communicating, and cooperating with the police or other law enforcement officials
in maintaining the public health, welfare, and safety." Sec. 18-136(b).

"This hotel is horrible. [. . .] Shady characters were hanging around. Was in the area for business, but will never stay here again.  Filthy!"

(ii)     July 7, 2010, from booking.com:

**No place for families**

"Rooms were smelly and the carpets looked dirty.  Then we witnessed what appeared to be illegal activities and seedy characters loitering about the place.  It got to the point that I was afraid for my children to be outside the room and my children felt the need to barricade the door before they would even attempt to go to sleep.  We cut our stay short by one day because none of us wanted to stay another night in this establishment."

(iii)    June 22, 2011, from booking.com:

**Not a place that I would reccomend.**

"I stayed for two nights, and didn't even have the room cleaned or get new towels brought in because I was sorties something might end up missing.  The room was pretty bad.  Water damage to the carpet, big brown spot on one towel, not too clean, door was in horrible shape. The first night I felt like I needed to carry some sort of weapon so I wouldn't get jumped.  We seem three prostitutes before we even parked on the first night.  Second night a man staying there asked if we wanted some marijuana.  Not a place for kids at all.  Wouldn't recommend unless you are tight on cash and don't care where you stay."

(iv)    April 2013 from TripAdvisor:

**Hotel was not as appeared online.  Safety and Security was a…**

"Hotel was not as appeared online.  Safety and security was a concern outside.  Poor breakfast options."

(v)    July 29, 2014, from booking.com:

**Watch your back.**

"The hotel was muggy and the neighborhood was sketchy.  Bring your sidearm or pay an extra 20 bucks to get a better hotel.  Never again."

(vi)   May 13, 2014, from booking.com:

**We listened to a prostitute next door all night lo**

"We spent the night lying awake listening to the men coming and going out of the prostitutes room (213) next door.  During their stay we covered our ears to protect our minds and imaginations from the discussing and frightening noises that we were hearing.  It was utterly repulsive and excruciating.  We left at 5:30 am after having slept less than 2 hours to drive the 12 hour trip home.  It was the most horrible hotel experience of my life."

(vii)  July 2014 from TripAdvisor:

**Wish I could rate lower… ReThink this Dump!!!**

"We booked 2 rooms for a night stay on our way to Florida.  Worst mistake ever!!!  The place and area is so run down and scary.  Thinking we would just get our money back and move on we find a big sign in the lobby that says NO REFUNDS.  Wony why???  Let me tell ya…local drug dealer in on the property 24/7.  Lady of the night hangs out right in front.  Owner/manager is very rude.  I walked down to a vending machine only to find out they don't work…but…I did get propositioned.  We travel A Lot…and I can honestly say this was the dirtiest, most run down scary place we have ever stayed!!!  Do not say here if avoidable!!!"

(viii) July 2015 from TripAdvisor:

**Dirty room**

"I would not recommend this facility unless you are ok with a dirty room and unsavory characters running around."

(ix)   January 25, 2015, from booking.com:

**Iffy**

"It was close to the road so it was noisy (to be expected).  On Saturday night, there were many shady characters hanging around in the parking lot.  Not for families or single females traveling alone on the weekend."

(x)   March 22, 2016, from booking.com:

**Darrell**

"I stayed here a few times and the stay was good until this couple started fighting and running around with guns."

54.

Tucker Inn knew or should have known from these and other customer reports of the dangerous nuisance of the property and the rampant crime that occurred on the premises.

**E.   Tucker Inn had knowledge of sex trafficking generally.**

55.

Tucker Inn knew or should have known of the existence of sex trafficking and its illegality more than 20 years ago, since the passage of the Trafficking

Victims Protection Act in 2000, and the United Nations' adoption of the Palermo

Protocol, to prevent, suppress, and punish trafficking in persons.

56.

Tucker Inn knew or should have known that during the relevant period

Atlanta was a national hub of sex trafficking and that the crime was prevalent in

the city, including at the ABVI. According to a well-publicized study

commissioned by the U.S. Department of Justice, Atlanta had one of the, if not the,

largest illegal sex trafficking economies in the country. In 2007, Atlanta's sex

trafficking economy was worth $290 million annually, and traffickers reported

average *weekly* earnings of roughly $33,000.[4] Over the last two decades, sex

trafficking has generated billions of dollars in illicit profits in metro Atlanta alone.

Tucker Inn received and retained some of those illicit profits through renting hotel

rooms used for the trafficking of Plaintiff and other minors.

---

[4] *See* Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta
Journal-Constitution, (March 13, 2014) https://www.ajc.com/news/crime--
law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM/
(last visited April 1, 2021); *see also* Meredith Dank, et.al, *Estimating the Size and
Structure of the Underground Commercial Sex Economy in Eight Major US Cities*,
Urban Institute, (March 12, 2014), 30-32, *available at*
https://www.urban.org/research/publication/estimating-size-and-structure-
underground-commercial-sex-economy-eight-major-us-cities (last visited April 1,
2021).

57.

Tucker Inn knew or should have known of the Atlanta area's well-publicized reputation as an "epicenter for human trafficking, [] particularly child sex trafficking,"[5] and as "the number one city for child sex trafficking."[6]

58.

Tucker Inn knew or should have known that sex trafficking is particularly pervasive in DeKalb County, where the ABVI is located.   Tucker Inn knew or should have known that in 2017 the County police had the tragic but commendable distinction of rescuing more sex trafficking victims than any other unit in Georgia.[7]

59.

Tucker Inn knew or should have known that hotels and motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking.  Offering privacy and anonymity on the cheap,

---

[5] Sally Yates, Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month, (Jan. 29, 2015), *available at* https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited April 1, 2021).
[6] *Id.*
[7] Joshua Sharpe, *Report: DeKalb Cops Rescue the Most Sex Trafficking Victims in Georgia*, Atlanta Journal-Constitution, May 18, 2017 https://www.ajc.com/news/local/report-dekalb-cops-rescue-the-most-sex-trafficking-victims-georgia/Lg6rXccQPCcqTITunbEW0M/.

they have been employed as . . . rendezvous sites where child sex workers meet

their clients on threat of violence from their procurers[.]" *City of Los Angeles v.*

*Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice

Roberts and Justice Thomas).

60.

Tucker Inn knew or should have known the following: The National Human

Trafficking Hotline has reported that ninety-two percent of the calls it received

involving hotels and motels reported sex trafficking, and another two percent

reported a combination of sex and labor trafficking.[8] A 2012 study found that 63

percent of trafficking incidents occurred in hotels.[9] And the Polaris Project found

that "75% of [trafficking] survivors responding to Polaris's survey reported

coming into contact with hotels at some point during their exploitation . . . .

Unfortunately, 94% also disclosed that they never received any assistance,

concern, or identification from hotel staff."

---

[8] *Human Trafficking and Hotels & Motels*, Polaris Project,
https://polarisproject.org/human-trafficking-and-hotels-motels/ (last visited April 1, 2021).
[9] Jon Conte, *et al., Inhospitable to Human Trafficking Program Evaluation*, at 2, Businesses Ending Slavery and Trafficking, (July 2014),
https://www.bestalliance.org/uploads/5/0/0/4/50047795/itt_program_evaluation.11_without_appendix.pdf at 5 (last visited April 1, 2021).

61.

Tucker Inn knew or should have known that attorneys for the hotel industry

estimated and reported to hotel industry representatives that eight out of ten human

trafficking arrests occur in or around hotels,[10] and that the industry had been

warned, among other things, to "Make sure hotel not complicit," "Manager not

looking the other way," and "No pay off for silence or lack of curiosity."[11]

62.

Tucker Inn knew or should have known that the organization called End

Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child-

Protection Code of Conduct (the "Code") in the United States in 2004.[12]

63.

Tucker Inn knew or should have known that the Code, which lays out well-

established best practices for the hospitality industry to identify, address, and deter

---

[10] Rich Keating, *Human Trafficking: What Is it and How It Impacts the Hospitality Industry*, Presentation Delivered at AHIA Sprint Conference 2013, Washington, D.C., http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983.

[11] Rich Keating, Human Trafficking: What Is it and How It Impacts the Hospitality Industry, Presentation Delivered at AHIA Sprint Conference 2013, Washington, D.C., http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983 at 6 (last visited April 1, 2021).

[12] *See The Tourism Child-Protection Code of Conduct*, ECPAT-USA, *available at* www.ecpatusa.org/code/ (last visited April 1, 2021).

sex trafficking, identifies six reasonable and logical steps hotels and motels can take:

    a.  establish corporate policy and procedures against sexual exploitation of children;

    b.  train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

    c.  include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

    d.  provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

    e.  support, collaborate and engage stakeholders in the prevention of sexual exploitation of children; and

    f.  report annually on the company's implementation of Code-related activities.

64.

Tucker Inn knew or should have known that ECPAT is only one of several high-profile organizations that have for years given hotels and motels the tools to

address the scourge of sex trafficking at hotels.

65.

Tucker Inn knew or should have known that during the relevant period the Department of Homeland Security ("DHS") published guidelines to help hotels and motels detect and respond to human trafficking. DHS's guidelines instruct housekeeping, maintenance, front desk, and security, among other hotel personnel, to be vigilant in looking for signs of human trafficking at hotels and motels, such as:

   a. persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

   b. persons who lack freedom of movement or are constantly monitored;

   c. persons who have no control over or possession of money or ID;

   d. persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

   e. requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f.  the presence of multiple computers, cell phones, pagers, credit

card swipers, or other technology in the room;

g.  extended stay with few or no personal possessions in the room;

h.  excessive amounts of sex paraphernalia in rooms (condoms,

lubricant, lotion, etc.);

i.  the same person reserves multiple rooms;

j.  a room is rented hourly, less than a day, or for an atypical

extended stay;

k.  attempts to sell items to or beg from patrons or staff;

l.  cars in the parking lot regularly parked backward, so the license

plates are not visible;

m. loitering and solicitation of male patrons;

n.  waiting at a table or bar and picked up by a male (trafficker or

customer)

o.  persons asking staff or patrons for food or money; and

p.  persons taking cash or receipts left on tables.

66.

Tucker Inn knew or should have known that, on September 15, 2013, the

Georgia legislature passed O.C.G.A. § 16-5-47 requiring hotels to post sex

trafficking notices "in each public restroom for the business or establishment and either in a conspicuous place near the public entrance of the business or establishment or in another conspicuous location in clear view of the public and employees where similar notices are customarily posted." The contents of the notice are prescribed by statute but must "provide information giving individuals a method to contact the National Human Trafficking Hotline and the Statewide Georgia Hotline for Domestic Minor Trafficking." Failure to comply with O.C.G.A. § 16-5-47 is a misdemeanor. On information and belief, Tucker Inn did not comply with this statute.

70.

Without a market—a conveniently located and anonymous place to confine humans, exchange money, and have sex—sex trafficking would cease to exist. In Plaintiff's case, ABVI, for a fee, provided this market for the 16-year-old to be confined and sold.

**COUNT I**
**STATUTORY LIABILITY 18 U.S.C. § 1595**

71.

Plaintiff incorporates the paragraphs 1 through 70 above, as if fully set forth herein.

72.

In violation of the TVPRA, Tucker Inn knowingly benefitted from

participation in a venture that Tucker Inn knew or should have known violated the

TVPRA.

73.

Tucker Inn knowingly benefitted from Plaintiff's sex trafficking by

receiving a percentage of the revenue generated by the operation of the ABVI,

including a percentage of the revenue generated for the rate charged on the rooms

in which Plaintiff was trafficked.

74.

Defendant participated in a venture by associating with Plaintiff's sex

trafficker, facilitating Plaintiff's child sex trafficking, and providing to Plaintiff's

trafficker the necessary venue for Plaintiff's child sex trafficking.  In the course of

this venture, numerous buyers paid to have sex with Plaintiff, a 16-year-old child,

at the ABVI.

75.

The venture in which Tucker Inn participated was in or affecting interstate

commerce.

76.

Tucker Inn knew or should have known the venture violated the TVPRA because Tucker Inn, its agents and representatives, had the opportunity to observe Plaintiff, a child, at the hotel, with and without her traffickers, the signs of child sex trafficking exhibited by Plaintiff, her traffickers, and the room in which she was trafficked, and the frequent traffic of adult male buyers to the child Plaintiff's room.

77.

Tucker Inn is directly and vicariously liable under 18 U.S.C. § 1595(a) for the actions of its agents and representatives.

78.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Tucker Inn's participation in this venture.

79.

Tucker Inn is liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

80.

Tucker Inn is jointly and severally liable for damages arising from the indivisible injuries it caused Plaintiff, whose damages were proximately caused by the acts discussed in this count.

## COUNT II – NUISANCE

81.

Plaintiff incorporates the paragraphs 1 through 80 above, as if fully set forth herein.

82.

The operation of the ABVI hotel constituted a nuisance under Georgia law because the hotel negligently turned a blind-eye and permitted illegal activities to occur at the hotel including prostitution, crimes against women, dangerous illegal activity, drugs, violence, sex crimes, and sex trafficking.

83.

The Defendant was operating a nuisance hotel. Although hotels are ordinarily legal, the operation, control, and activity of this hotel was being conducted in such a manner as to permit and allow illegal activity to occur at the hotel, thereby creating a nuisance.

84.

Upon information and belief, Plaintiff was trafficked at this nuisance hotel because of its notoriety as a place that permitted child sex trafficking and which was complicit with sex traffickers.

85.

Thus, as a direct result of this hotel being a nuisance, Plaintiff was sold for sex at this hotel, was harmed and incurred damages because of same.

86.

Defendant is liable for all damages arising under Georgia law as a result of this nuisance and the harm caused to Plaintiff.

## **DAMAGES**

87.

Plaintiff incorporates paragraphs 1 through 86 as if fully set forth herein.

88.

As a proximate and foreseeable result of Tucker Inn's violations of the TVPRA and Georgia nuisance law, Plaintiff sustained personal injuries, mental and emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial. Plaintiff brings each and every claim permissible under Georgia law against Tucker Inn for injuries suffered in the

incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under Georgia law. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia law, including, but not limited to:

a)    Personal injuries;

b)    Past, present and future conscious pain and suffering;

c)    Loss of enjoyment of life;

d)    Medical expenses;

e)    Mental anguish and emotional distress;

f)    Loss of past, present, and future wages;

g)    Incidental expenses;

h)    All special, compensatory, economic, punitive, and other damages permissible under Georgia law; and

i)    Consequential damages to be proven at trial.

89.

Plaintiff is entitled to an award of punitive damages without limitation or cap because the actions of Tucker Inn and its employees were willful and wanton and showed an entire want of care, which raises the presumption of a conscious

indifference to consequences.

90.

Tucker Inn's actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to recover her necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses required by this action. (O.C.G.A. §§ 13-6-11, 9-11-68 and 9-15-14, and 18 U.S.C. § 1595(a)). Furthermore, Plaintiff is entitled to all expenses of litigation and attorneys' fees pursuant to all other Georgia statutory and common laws.

WHEREFORE, Plaintiff prays for a judgment to be awarded to her and against Defendant for the following:

a)   Process issue as provided by law;

b)   Plaintiff be awarded actual damages in amounts to be shown at trial from Defendant;

c)   Plaintiff be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendant;

d)   Plaintiff be awarded a trial by jury; and

e)      Plaintiff have such other relief as this Court deems just and appropriate

under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 27th day of June, 2022.

Respectfully submitted,

**ANDERSEN, TATE & CARR, P.C.**

***/s/ Patrick J. McDonough***
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Trinity Hundredmark
Georgia Bar No. 140808
thundred@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
Attorneys for Plaintiff

**ANDERSEN, TATE & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680