IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| E.M., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE NO. |
| v. | : | 1:22-cv-02559-WMR |
| | : | |
| TUCKER INN, INC., d/b/a, | : | |
| AMERICA'S BEST VALUE INN, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT TUCKER INN, INC. D/B/A AMERICA'S BEST VALUE INN'S MOTION TO EXCLUDE THE OPINION TESTIMONY OF RANDALL ATLAS

Plaintiff identified Randall Atlas, Ph. D., FAIA CPTED ("Dr. Atlas") as an expert witness in her Rule 26 Disclosures filed on July 28, 2023.  (Doc. No. 77). Dr. Atlas is one of the most qualified premises security experts in the country. He is a member of the premises security committee of the National Fire Protection Association, which authors the security standards applicable to the United States hotel and lodging industry. (Doc. No. 98-1 at 4-5). He is also the author of two well-respected books on security and crime prevention for professionals. (Doc. No. 98-1at 4).  Dr. Atlas holds a Bachelor of Criminal Justice, Bachelor of Architecture, Master of Architecture, and a Doctorate of Criminology.   (*See* Doc. 98-1 at 54).

1

Dr. Atlas was disclosed by Plaintiff as a "security expert," because that's what he is. (Doc. No. 77 at 1).  Throughout his career, he has provided architectural consulting and security design services, focusing on crime prevention and overall security.  (*See* Doc. No. 98-2 at 4).  Further, he has provided teaching and risk assessments in the areas of architectural safety, crime prevention and security.  *Id.*   In this case, Dr. Atlas opines on the security (or lack thereof) at Defendant's hotel and the reasonableness of its security practices as compared to those of a reasonable hotelier.  Further, he opines on what the crime statistics occurring at and around Defendant's hotel would or should make known to a reasonable hotelier in terms of safety and security. Because Dr. Atlas's testimony satisfies the three-part test set forth in Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, Defendant's motion should be denied.

## <u>ARGUMENT AND CITATION TO AUTHORITY</u>

After *Daubert*, "the rejection of expert testimony is the exception rather than the rule." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021) (quoting Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments). As the Eleventh Circuit explained in *Moore*, although a district court must screen out "speculative" and "unreliable expert testimony," the court must still leave it to the jury to weigh credibility based on "[v]igorous cross-examination, presentation of

contrary evidence, and careful instruction on the burden of proof." 995 F.3d at

850  (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596

(1993)).  To that end, Rule 702 allows a "witness who is qualified as an expert by

knowledge, skill, experience, training, or education" to provide opinion testimony

if her "specialized knowledge will help the trier of fact to understand the evidence

or to determine a fact in issue" and if her opinions meet a minimum level of

reliability. Fed. R. Evid. 702. The admissibility inquiry considers three factors: (1)

qualifications; (2) reliability; and (3) relevance. *Moore*, 995 F.3d at 850.   Because

Dr. Atlas's testimony satisfies the three-part test set forth in Fed. R. Evid. 702,

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its

progeny, Defendant's motion should be denied.

## I.     Dr. Atlas does not need to be a "sex-trafficking expert" in order to testify as to crime prevention and appropriate security procedures.

Defendant does not ask the Court to exclude Dr. Atlas because he lacks

qualifications as a "security expert," but rather, because he is not specifically a

"sex trafficking expert." (Doc. No. 98 at 6). This sleight of hand is apparently

necessary because Defendant cannot legitimately question the qualifications and

opinions of Dr. Atlas regarding his area of expertise, crime prevention and

security. There is no support whatsoever, and Defendant points to none, for the

argument that a security expert must be additionally and singularly qualified as to

each specific crime that occurs in each case. The reason that Defendant does not

point to a specific ruling supporting its position is because a court has never made

such a limited holding—to do so would be absurd.

If every security expert had to be an expert in the particular crime that

happened, no one could testify in a third-party criminal case unless they were

specifically and uniquely qualified as experts in, for example, assault, battery, rape,

theft, robbery, *armed* robbery, car break-ins versus apartment break-ins, the list is

endless.  A premises liability case involving a shooting would require a "shooting

expert," while a case involving a purse snatching would require a "purse snatching

expert." The absurdities that would stem from such a requirement are endless.

Instead, security experts routinely opine about the interrelationship of criminal

activity and specific crimes. *See, e.g.*, *Thomas v. Circle K Stores, Inc.*, 8:19-CV-

2817-JSS, 2021 WL 3134781, at *2 (M.D. Fla. 2021) (Expert "attests that the

*robbery and shooting* of Plaintiff were reasonably foreseeable because of

*increased criminal activity* at the store, and that Circle K's security measures were

not adequate.") (emphasis added).

As in its motion for summary judgment, Defendant attempts repeatedly to

argue that prior sex crimes at the property, including prostitution, are not relevant

to establishing what Defendant "should have known" about Plaintiff's minor sex

trafficking. Recently, courts, including this one, entered rulings holding that just

the opposite is true. Specifically, this Court has held that, "[p]rior incidents of

prostitution are sufficiently similar to the crimes that caused Plaintiff's injuries—
namely, keeping a place of prostitution, prostitution, pimping, and sexual
servitude—to make the latter crimes foreseeable." *Does 1-4 v. Red Roof Inns, Inc.*,
1:21-CV-04278-WMR, 2023 WL 5444261, at *3 (N.D. Ga. Aug. 10, 2023) (Ray,
J.). Additionally, the Georgia Court of Appeals reached the same obvious
conclusion on very similar facts in *Suresh and Durga, Inc. v. Doe*. There, the
defendant argued, "that the prior crimes committed on the ABIS property (or at
least the ones of which Defendant was aware) were not substantially similar
enough to the unique crime of sex trafficking to render Doe's injuries foreseeable."
894 S.E.2d 602, 607 (Ga. Ct. App. 2023). The Court of Appeals disagreed, finding
that all types of prior crime at the hotel were relevant to the defendant's
knowledge. *Id.* at 608 (Noting "the history of crime at ABIS, testimony
concerning the open and obvious nature of the criminal activity, the multiple
security cameras allowing employees to witness the activity, and allegations of
motel employees' interactions with victims."). Defendant's red herring argument
fails entirely if the prior crimes are relevant evidence to its knowledge, which, as
this Court and the Georgia Court of Appeals has held, they are.

A simple example from this case shows why Dr. Atlas's security opinions
are not only relevant and helpful, but also why a security expert does not have to

be a specific "sex trafficking expert" to provide a relevant and helpful opinion in a case where the crime on the premises is sex trafficking.[1]

Defendant in this case has testified that: (1) it has no security training or written security policies; (2) it has never called the police because someone was engaging in prostitution; (3) it has no idea how to identify prostitution, pimps, or sex trafficking; and (4) ***never, not once, has the hotel ever suspected anyone of engaging in prostitution at the hotel.*** (Doc. No. 98-1 at 11–13; Doc. No. 111 at 72:12–16).  On May 17, Dr. Atlas conducted a noticed site inspection of the hotel. At that site inspection, the following large, strap-on dildo was found on the hotel's property in broad daylight.  (Doc. No. 98-1 at 27).[2]

---

[1] Plaintiff apologizes for the following picture and description, but it is among the evidence in this case.

[2] This Court opined in a conference that this evidence could be appropriate impeachment evidence given the hotel's blanket denial that it has never seen anything that made it suspect someone at the hotel of engaging in prostitution. *See* Case No. 1:22-cv-02559-WMR, Doc. No. 81.



About this disturbing finding, Dr. Atlas opined:

> I have inspected numerous hotel properties over the years and I have never seen a strap-on dildo on the grounds of any Hotel. That this item was here during a noticed inspection means that obscene sex paraphernalia is common enough on the property to escape attention, or the property is never monitored or cleaned at all, a significant security hazard. Either way, such an item is not normal on the grounds of any hotel in the middle of the day. The item is a sad indictment of who the Hotel exists to serve, particularly when one considers that Tonya Harris lived at the Hotel with two children.

(Doc. No. 98-1 at 24). The above opinion is well within the bounds of Dr. Atlas's

expertise as a "security expert." A security expert need not be disclosed as a "sex

trafficking expert" in order to opine that finding such an item on the hotel's

property—where children at times live— is an abnormal finding and therefore,

indicative that sexual paraphernalia found openly on the property is common

and/or the hotel is deliberately ignorant of the ongoing sexual activity occurring on the property, including prostitution and sex trafficking. Given the hotel's denials that it has never once seen anything resembling prostitution on its property, a security expert's testimony may be offered to impeach that testimony, which Dr. Atlas properly does.

Numerous other examples further illustrate the helpful role a professional and doctor in criminology brings to the jury.  Dr. Atlas opines that the hotel should have monitored the foot traffic of guests and its surveillance system due to the extensive prior crimes—including sex crimes—at the hotel.  (Doc. No. 98-1 at 43). Situational awareness, training, and better record keeping could have prevented the sex trafficking of E.M. at the hotel. *Id.*  Dr. Atlas can explain to the jury how a crime of opportunity escalates into a crime against a person when the property lacks appropriate access controls and creates an attractive magnet for crime. *Id.* at 44.  Additionally, Dr. Atlas explains how the facts on the ground at the hotel— renting rooms by the hour, high foot traffic, the appearance of scantily-clad girls in the back of the hotel, sex in outdoor stairwells—contributes to what Defendant should have known about sex trafficking and other crimes occurring at its hotel. *Id.* at 47–51.

Plaintiff could point to many other examples, but the bottom line is that an expert in crime prevention and security may opine on any number of crimes that

have occurred without having to have specialized training or expertise in each

individual crime.  Here, Dr. Atlas is qualified to opine on any crime that occurred

at the hotel,[3] including prostitution, pandering, pimping, and, yes, sex trafficking,

all which occurred at Defendant's hotel with regularity. Dr. Atlas, an eminently

qualified criminologist and security expert, may properly opine on them all,

including, specifically, the sex trafficking of 16-year-old E.M. at the hotel.

## II.   Dr. Atlas is qualified to offer opinions on premises security, including opinions on safety rules pertaining to the security and safety of hotel guests, and the deterrence of prostitution and sex trafficking.

In his role as a security and safety expert and consultant, Dr. Atlas has

testified in or consulted on several hundred premises negligence cases in numerous

jurisdictions across the country. (Doc. No. 98-1 at 3–4). Dr. Atlas is a Certified

Protection Professional with ASIS International. (Doc. No. 98-1 at 4). Dr. Atlas

holds a Bachelor's degree in Criminal Justice from Florida State University, a

Ph.D. in Criminology from the University of South Florida, and a Master's of

Architecture degree from the University of Illinois, specializing in the field of

Crime Prevention Through Environmental Design (CPTED). *Id*. Additionally, Dr.

---

[3] For example, Dr. Atlas is qualified to opine on the six men arrested in two days for pandering in the parking lot, or the stabbing of a woman engaged in prostitution at the hotel by another woman engaged in prostitution at the hotel, where she ran naked and bleeding around the building until she encountered a hotel clerk who did nothing to help her. (*See* Doc. No. 98-1 at 10, 19). And similarly, that includes E.M.'s sex trafficking there as well.

Atlas is an instructor for the National Crime Prevention Institute, where he teaches and trains police officers and security directors in the field of security and CPTED. *Id*. Dr. Atlas has authored hundreds of articles, and made numerous presentations on security, premises security negligence, and security guidelines and practices. *Id*. Additionally, he's written two books on security and crime prevention. *Id*.

In addition to holding a Ph.D. in Criminology, Dr. Atlas has taken sex trafficking trainings, and reviewed resources on sex trafficking offered by the Polaris Foundation and the Blue Campaign, which is sponsored by the Department of Homeland Security. *Id*. What's more, Dr. Atlas's family has a deep-rooted history in the hotel industry, with ownership of establishments in Miami Beach and New York City. *Id*. Throughout his early life, Dr. Atlas worked in these hotels in various roles. *Id*. Dr. Atlas actively participated as a member of the Greater Miami Hotel and Hotel Association for a decade. *Id*. Moreover, Dr. Atlas has testified in or consulted on numerous cases involving premises security at lodging facilities. (Doc. No. 98-2 at 34–35).

"[E]xperts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *U.S. v. Frazier*, 387 F.3d 1244, 1260–1261 (11th Cir. 2004). "In fact, the plain language of Rule 702 makes this clear: expert status may be based on 'knowledge, skill, experience, training, or education.'" *Id.* at 1261

(quoting Fed. R. Evid. 702). "The Committee Note to the 2000 Amendments of Rule 702 also explains that '[n]othing in this amendment is intended to suggest that experience alone…may not provide a sufficient foundation for expert testimony.'" *Id.* (quoting Fed. R. Evid. 702 Advisory Committee's Note (2000 amends)).

Dr. Atlas does not need his expertise limited to sex trafficking at budget motels to opine on the duties and obligations of Defendant as they pertain to security, the appropriate standards for hotel security, room management, parking lot security, security management, the establishment and monitoring of adequate security and safety protocols, policies, and procedures, safety rules pertaining to security and safety of guests, the deterrence of prostitution and sex trafficking, the foreseeability of crime at the hotel, including sex trafficking, and the causal relationship between Defendant's breaches in its security and safety duties and obligations and the sex trafficking of minors on the premises. "An expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case." *McGee v. Evenflo Co.,* 2003 WL 23350493, at *3 (M.D. Ga. 2003). "General knowledge in a field … is normally sufficient to qualify a witness as an expert in that field's specialties as well." *Goforth v. Partis*, 2007 WL 988733, at *3 (M.D. Ga. 2007). "[I]t is not necessary that the witness be recognized as a leading authority in the field in question. Gaps in an expert witness' qualifications or

knowledge generally go to the weight of the witness' testimony, not its admissibility." *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 692 (N.D. Ga. 2006).

Defendant's attempt to move the goalposts and disqualify Dr. Atlas because he is not a "sex trafficking expert" inappropriately mischaracterizes the basis of his expert opinion. Plaintiff has never held Dr. Atlas out as an expert in sex trafficking, but rather, in premises security and safety. That general subject matter is clearly relevant to this case, regardless of whether it involves specific allegations of sex trafficking. Even so, the criminal act of sex trafficking at a hotel is most definitely a concern of premises security, and the sex trafficking of 16-year-old E.M. at Defendant's hotel is clearly a topic appropriate for expert opinion.

Because Dr. Atlas's specialized knowledge of premises security is based on his decades of scholarship and experience conducting security assessments of all building types, including assessing the risk of foreseeable crimes, he is more than qualified to render opinions on premises security, including his opinions on safety rules pertaining to the security and safety of hotel guests, and the deterrence of prostitution and sex trafficking.

### III.   Dr. Atlas's opinions are reliable.

Dr. Atlas's opinions are reliable and based on a sound methodology. Defendant simply dislikes Dr. Atlas's conclusions, which are supported by almost overwhelming evidence, and thus attempts to erase them by attacking the

12

underpinnings and claiming he needs a more specific expertise than security. (*See, e.g.,* Doc. No. 98-1 at 9–20.) "The reliability inquiry focuses solely on the principles and methodology underlying the expert's opinion, *not* the expert's conclusions." *Daubert*, 508 U.S. at 595 (emphasis in original). The question is not whether the expert's opinion is correct, but whether the basis on which it rests is reliable. *Allison*, 184 F.3d at 1312.

This Court has previously held that "social sciences"[4] in sex trafficking cases are not evaluated as Defendant urges, using the "hard science methodologies." *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1318 (11th Cir. 2022).

> [Defendants] challenge the reliability of Dr. Bliss's opinions, faulting her "methodology." Although the principles set out in *Daubert* apply in determining the reliability of a pyschologist's expert testimony, "social science research, theories, and opinions cannot have the exactness of hard science methodologies, and peer review, publication, error rate, etc. are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert." *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1318 (11th Cir. 2022). Thus, in the context of a social science such as psychology, where experimental conditions and controls are not available, "other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations." Id. (citation and internal quotation marks omitted).

---

[4] Social science is defined as the "study of human society and of individual relationships in and to society." SOCIAL SCIENCE, The American Heritage Dictionary of the English Language (5th ed. 2016). This definition applies quite readily to the practice of security, which necessarily involves the interrelationships between staff, customers or guests, bystanders, criminals, and victims.

*Does 1-4 v. Red Roof Inns, Inc.*, 1:21-CV-04278-WMR, 2023 WL 5444260, at *3

(N.D. Ga. Aug. 21, 2023) (Ray, J.).

Similarly, experimental conditions and controls are not typically available in the application of security measures at a hotel.[5]  Instead, it is appropriate here to consider Dr. Atlas's professional experience, scholarship, education, training, and his observations that form the basis of his opinions regarding premises security at Defendant's hotel. For over 25 years, Dr. Atlas has operated Atlas Safety and Security Design, Inc., which provides consulting services to architects, owners, and developers.  (Doc. No. 98-2 at 3–5). These consulting services encompass comprehensive security assessments for all building types, including assessing the risk of foreseeable crimes. *Id*. As a practitioner of social science, Dr. Atlas's experience amply qualifies him to opine on the subject matter of premises security at the Tucker Inn, regardless of whether his conclusions are satisfactory to Defendant.

Furthermore, Dr. Atlas relies on methodology consistent with the Best Practices and Forensic Methodology of the International Association of Professional Security Consultants as well as ASIS International, the preeminent worldwide professional security organization, Protection of Assets Manual (POA),

---

[5] To do so would mean purposely creating criminal conditions in order to study them, which would likely constitute criminal activity itself.

the ASIS International Facilities Physical Security Measure Guideline. (Doc. No. 98-1 at 5; Doc. No. 98-2 at 42:16–25). The fact that this methodology is also applicable in other contexts, such as in the context of premises security and crime prevention in prisons, does not render it unreliable here. To be sure, Dr. Atlas has applied this methodology in hundreds of other cases in which he has been qualified as an expert, including premises security cases in the context of lodging facilities.[6] (Doc. No. 98-1 at 3-5).

Despite Defendant's repeated reference to Dr. Atlas's reliance on "assumed" facts that are "not supported, or specifically contradicted, by the evidence in the record," Defendant does not identify any contrary evidence Dr. Atlas failed to consider. (Doc. No. 98 at 13). Even if Defendant could identify evidence to rebut Dr. Atlas's testimony, the existence of that evidence would not provide a basis to exclude his testimony. As one district court held, "[T]he existence of potentially contrary evidence does not undermine the reliability of [the expert]'s methodology, but rather provides fodder for fact-finding at trial." *In re Com. Fin. Servs., Inc.*, 350 B.R. 520, 533 (Bankr. N.D. Okla 2005); *accord In re C. R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, NO. MDL 2187, 2018 WL 605891, at *4 (S.D.W. Va. Jan. 29, 2018) ("Where the [movants] merely cite the existence of authority

---

[6] It should be noted that Dr. Atlas testified that he has never been excluded as an expert by a court, nor has any of his opinions been limited by a court.  (*See* Doc. No. 98-2 at 21).

not reviewed by an expert, without more, this serves only to challenge the weight

of [the expert's opinions], not their reliability."). Defendant is free to question Dr.

Atlas about evidence it hopes might undermine his conclusions—assuming it finds

any—but the mere possibility of contrary evidence does not warrant excluding his

testimony altogether.  Because Dr. Atlas is sufficiently qualified in the area of

premises security and his methodology is reliable, he should be permitted to offer

his expert opinions in this case.

### IV.  Dr. Atlas's opinions are relevant and help the jury understand the implication of Defendant's security failures and what a reasonable hotelier should know.

"[E]xpert testimony is relevant if it will assist the trier of fact to understand the

evidence or to determine a fact at issue in the case." *Ahuja v. Cumberland Mall,*

*LLC*, 821 F. Supp. 2d 1317, 1323 (N.D. Ga. 2011) (citing *Allison v. McGhan Med.*

*Corp.*, 184 F.3d 1300, 1308–1309 (11th Cir. 1999)). Defendant complains that Dr.

Atlas makes improper legal conclusions as to the ultimate issues of the case. Dr.

Atlas' opinion is not an impermissible legal conclusion.  Constructive knowledge

is an issue of fact and, though an important one, "an opinion is not objectionable

just because it embraces an ultimate issue." Fed. R. Evid. 704. For example,

whether Defendant's business should have observed the inappropriate foot traffic

on the premises is not information that a lay person would know. (Doc. No. 98-1 at

16

43, 47). Lawyers cannot just espouse what information, if any, the implementation of proper security procedures would have provided Defendant.

Further, Courts in this circuit have routinely permitted the use of expert testimony on what a defendant should have known. *See, e.g., Campbell v. Sikes*, 169 F.3d 1353, 1368 (11th Cir. 1999) (discussing two competing experts' "should have known" testimony); *In re Chantix (Varenicline) Products Liability Litigation*, 889 F. Supp 2d 1272, 1303 (N.D. Ala. Aug. 21, 2012) (distinguishing between expert opinion on what a defendant "knew" and what a defendant "should have known" and permitting plaintiff's expert to testify as to what the defendant "should have known"); *See also RLI Insurance Company v. OutsideIn Architecture, LLC*, No. 8:20-CV-2395-CEH-AEP, 2023 WL 5840590, at *# (M.D. Fla. Sept. 11, 2023) (permitting the use of expert testimony on what defendant "should have known"). Because Dr. Atlas's testimony goes beyond what the lawyers for the Plaintiff can argue during closing, and aids in the jury's ability to understand the evidence and determine the facts in issue, it is a permissible expert opinion.

## V.   Dr. Atlas's opinions are relevant and should not be limited under Rule 403.

Finally, Defendant asks this court to limit Dr. Atlas's testimony under Federal Rule of Evidence 403. It is well-established that the district court's "discretion to exclude evidence under Rule 403 is narrowly circumscribed."

*Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014). The court may exclude testimony under this rule only if it finds that "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Because it allows a trial court to exclude evidence that is probative, Rule 403 is an extraordinary remedy which should be used sparingly. *Aycock*, 769 F.3d at 1069. "The balance should be struck in favor of admissibility," and when assessing a Rule 403 motion, "courts must look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact. *Id*. (internal quotation marks omitted). But "Rule 403 should be used only when *unfair* prejudice *substantially* outweighs probative value" *Aycock*, 769 F.3d at 1069 (emphasis in original; internal quotation marks omitted).

Despite Defendant's contention, Dr. Atlas's opinions are not "factual speculations and legal conclusions." (Doc. No. 98 at 15).  To be clear, Dr. Atlas does not assume facts that are not supported by the evidence in this case. An expert is "permitted to base his opinion on a particular version of the disputed facts and the weight to be accorded to that opinion is for the jury." *Jordan v. Filippone*, 2021 WL 1564430, at *4 (S.D. Fla. Apr. 21, 2021) (internal citation omitted). A court may not exclude an expert's opinions merely because the facts of the case are

disputed.[7] *Id*.  As to Defendant's enumeration of alleged factual speculations,

Plaintiff responds to each of Defendant's arguments as follows:[8]

1. **Defendant's hotel is located in an area well known for prostitution.** Dr. Atlas cites numerous facts in evidence that support this conclusion, including the fact that Dekalb County Police called a meeting of the owners at the Tucker Inn and the surrounding hotels specifically to address the rampant prostitution and crime. (Doc. No. 98-1 at 9–20).

2. **"There is no…monitored video surveillance system. The entry point of the hotel is not monitored by hotel or security staff."** In drawing this conclusion, Dr. Atlas relies on the testimony of Umesh Patel, the owner and operator of the motel, that no one at the hotel was tasked with actively monitoring the cameras at all and Defendant never told its staff to watch the monitors. (Doc. No. 98-1 at 11).

---

[7] Of note, in it's Motion for Summary Judgment, Defendant alleges that it did not or should not have know about Plaintiff's sex trafficking.  (*See* Doc. No. 95-1 at 3). It blames Plaintiff for having limited interactions with the staff and claims that it had no way of knowing about her trafficker or her commercial exploitation.  (Id. at 3, 6–8).  Dr. Atlas' testimony will also help establish these disputed facts.

[8] For ease of reference, Plaintiff will adopt Defendant's numbering system for her response. However, it is important to note that Defendant's numbering scheme is flawed, as it omits numbers 6, 8, 12, 13, 15 and 16. Doc. No. 98 at 15–20.

3. **"Simply put, had reasonable security measures been implemented and executed by the Defendant, it would have prevented the type of crime that resulted in the sex trafficking of E.M."** As discussed *infra* section IV, "an opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Thus, an expert is explicitly permitted to opine on an undecided point of fact that is sufficient to resolve the entire case. Further, this opinion is helpful to the jury because it helps them understand the consequences of Defendant's security failures.  Lawyers cannot just espouse the impact Defendant's implementation of proper security measures would have had on the deterrence of crime, including prostitution and sex trafficking. Because Dr. Atlas's testimony goes beyond what the lawyers for the Plaintiff can argue during closing, and aids in the jury's ability to understand the evidence and determine the facts in issue, it is a permissible expert opinion.

4. **"[T]he failure of the Defendant to take reasonable precautions to protect its guests created a risk that an interested buyer, focused on an opportunistic crime of prostitution and sex trafficking, would be able to gain undeterred and undetected access to the parking lot and hotel rooms."** As above, Dr. Atlas may opine on an ultimate issue to assist the jury in understanding the consequences of Defendant's security failures.

5.  **"Any time there is a property crime of prostitution, it can quickly and most assuredly escalate to the trafficking of underage persons…"** Relying on academic literature accepted in the professional community at issue and similar observations through practical experience is an appropriate methodology. *Treminio v. Crowley Maritime Co. et al.*, 2023 WL 8004591, at \*4 (M.D. Fla. Nov. 17, 2023). Dr. Atlas relied on published sources generally accepted by the premises security community and his experience in premises security to formulate this opinion. (Doc. No. 98-1 at 5).  Once again, Defendant dislikes Dr. Atlas's conclusion and thus attempts to erase it by attacking the underpinnings.  However, such criticism of Dr. Atlas's methodology goes to his credibility, not admissibility. Defendant will be free at trial to criticize Dr. Atlas, "vigorously cross-examine" him, or "present contrary evidence" to attack his opinions. *Redmond v. City of E. Point, Ga.*, 2004 WK 6060552, at \*10 (N.D. Ga. Mar. 29, 2004); *accord Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

7.  **Defendant's failure to "inspect and patrol the entire property daily, without any clear documentation of reporting criminal activity or verification of guests in a room…"**  In drawing this conclusion, Dr. Atlas relies on the testimony of Umesh Patel, the owner and operator of the Tucker Inn. Mr. Patel testified that the hotel had no safety or security policy

to observe guest activities. (Doc. No. 98-1 at 11). Additionally, Mr. Patel received no training from Defendant and never received any training regarding safety and security. *Id*.

9. **"[T]he pimps and traffickers were confident that they could enter the hotel property and engage in unlawful activity without fear of consequences. The potential buyers, or johns, knew how easy it was to get in and around the hotel room from the adjacent public streets."** Dr. Atlas cites numerous facts in evidence that support this conclusion. To begin, multiple witnesses testified that they observed what they believed were pimps with girls at the hotel. (Doc. No. 98-1 at 14, 18-19). Further, there is ample evidence that pimps and traffickers operated openly and brazenly at the hotel. For example, one witness reported that they observed pimps calling girls "bitches" and loitering around the hotel. (Doc. No. 98-1 at 14). Furthermore, the fact that the property was a well-known destination for those engaged in illegal activity is supported, for example, by the large number of sex crimes reported by police at Defendant's hotel. (Doc. No. 98-1 at 9–11).

10-11. **"[T]he hotel was an "Attractive Magnet", and a haven for persons to commit criminal acts with impunity, and without consequences."**

"**Defendant lacked reasonable security practices.**" Dr. Atlas relies

22

once again on the large number of crimes reported by police at
Defendant's hotel. *Id*. Additionally, Dr. Atlas relies on Defendant's own
testimony that the hotel has never once called the police because
someone was engaging in prostitution and that the hotel has no security
training. (Doc. No. 98-1 at 11-13).

14. **"The Tucker Inn did not have increased staff patrols, or demand guests
leave who violate their room occupancy…nor maintain an active list of
'do not rent to' persons who were suspected of illegal activities on the
property, etc."** Mr. Patel testified that the hotel had no safety or security
policy to observe guest activities. (Doc. No. 98-1 at 11). Additionally,
Defendant never provided its employees with any training regarding safety
and security. (Doc. No. 98-1 at 11). Defendant has testified that it did not
have any security training before E.M.'s trafficking, and the hotel still has no
security training or written training policies. (Doc. No. 98-1 at 13).

17. **Defendant should have known about the sex trafficking presentation at
a hospitality conference in 2013, as well as the numerous other widely-
available trainings and information to learn about the risk of sex
trafficking at its hotel.** In drawing this conclusion, Dr. Atlas relied not only
on the Hospitality Industry Conference information, but also on the

information provided freely online by the Polaris Project, Human

Trafficking Hotline and other studies. (Doc. No. 98-1 at 49).

Other than repeating its argument that Dr. Atlas's opinions make improper

legal conclusions as to the ultimate issues, Defendant does not explain why Dr.

Atlas's testimony is *unfairly* prejudicial. To be sure, this testimony is adverse to

Defendant. But as the Eleventh Circuit has held, "[t]here is a difference between

unfairly prejudicial evidence, which may be excluded under Rule 403, and

evidence that is simply adverse to an opposing party. Rule 403 calls for the

exclusion of the former, not the latter." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d

1275, 1285 (11th Cir. 2015) (cleaned up). For these reasons, the Court should deny

Defendant's motion to exclude Dr. Atlas's opinions under Rule 403.

## <u>CONCLUSION</u>

Dr. Atlas is one of the most qualified premises security experts in the

country. His opinions in this case are relevant and helpful to explain to the jury the

serious consequences of Defendant's security failures. As such, Defendant's

motion should be denied.

Respectfully submitted this 16th day of January, 2024.

ANDERSEN, TATE, and CARR, P.C.

*/s/ Patrick J. McDonough*
Patrick J. McDonough
Georgia Bar No. 489855

24

pmcdonough@atclawfirm.com
Trinity Hundredmark
Georgia Bar No. 140808
thundred@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1D, Counsel certifies that the foregoing document complies with the font and point selections approved by the Court in L.R. 5.1.C. This document was prepared using Times New Roman 14-point font.

Respectfully submitted this 16th day of January, 2024.

**ANDERSEN, TATE, and CARR, P.C.**

***/s/ Patrick J. McDonough***
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Trinity Hundredmark
Georgia Bar No. 140808
thundred@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

E.M.,                                          :
                                               :
    Plaintiff,                             :
                                               :          CIVIL ACTION FILE NO.
    v.                                     :          1:22-cv-02559-WMR
                                               :
TUCKER INN, INC., d/b/a,                        :
AMERICA'S BEST VALUE INN,                       :
                                               :
    Defendant.                             :
                                               :

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that Plaintiff by and through her attorneys delivered a true and correct copy of the foregoing, filed with the Court in the above-styled case, by electronic service through filing in the Court's electronic case files ("ECF") system which will automatically send notification of such filing to the attorneys of record.

Respectfully submitted this 16th day of January, 2024.

ANDERSEN, TATE, and CARR, P.C.

*/s/ Patrick J. McDonough*
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Trinity Hundredmark
Georgia Bar No. 140808
thundred@atclawfirm.com
Jonathan S. Tonge

27

Georgia Bar No. 303999
jtonge@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile